

FILED

JAN - 9 2014

CLERK

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

CIV 10-3014
CR 07-30010-01

EKUETA PALEGA, a/k/a
"Q" PALEGA,
       Petitioner,

    -vs-                     REPORT AND RECOMMENDATION

UNITED STATES OF AMERICA,
       Respondent.

      Ekueta Palega was convicted of conspiracy and possession of methamphetamine with intent to distribute and was sentenced to 230 months of custody. The Eighth Circuit Court of Appeals affirmed his conviction and sentence on February 19, 2009. *United States v. Palega,* 556 F.3d 709 (8th Cir. 2009).

      Palega filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Petitioner, alleged the following eleven instances of ineffective assistance by his two attorneys, Attorney Jana Miner and Attorney Edward Albright:

1.    The failure to request an identity hearing or investigate and present evidence that Petitioner's brother was in fact the person alleged to be "Q";

2.    The failure to file a motion for the magistrate judge to recuse himself from the suppression hearing as he had ex parte communications with the government in connection with the search warrant;

3.    The failure to file a motion to suppress Petitioner's alleged confession;

4.    The failure to conduct a pretrial investigation or interview witnesses;

5.    The failure to advise Petitioner of the hazards of going to trial;

6.    The failure to negotiate a plea agreement;

7.    The failure to make Batson challenges during jury selection;

8.     The failure to object to leading questions at trial;

9.     The failure to argue mistaken identity at trial;

10.    The failure to present evidence and argue at sentencing that some of the alleged drug quantities identified by co-conspirator Burnette were in fact zip-lock bags of sugar; and

11.    The failure to argue on appeal the Magistrate Judge's conflict of interest.

Petitioner combined some of the arguments and briefed his arguments in seven issues. The Government followed Petitioner's organization and addressed the same seven issues.

The Government, in its Supplemental Response to Petitioner's Motion, argued that the Court lacked jurisdiction because of the Motion was filed beyond the one year limitation. Doc. 54. Later, however, the Government conceded Petitioner's Motion was filed timely. Doc. 55.

To prevail, Petitioner must show both that his trial counsel's performance was professionally deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show prejudice, Petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694.

1.     Former counsel were not ineffective for failing to file a motion for the magistrate judge to recuse himself from the suppression hearing as he had ex parte communications with the government in connection with the search warrant.

The basis for this claim of ineffective assistance of counsel is reflected in the Bench Decision / Report and Recommendation found at Doc. 85 in file CR 07-30010.

On November 29, 2006, Magistrate Judge Mark A. Moreno issued three search warrants, one of which was for the residence of Morris Palega, a/k/a "Q". When the search warrant was executed, the officers realized that "Q" is actually Ekueta Palega, not Morris Palega. Upon making that discovery, the officers contacted Judge Moreno. Petitioner, through his attorney, filed a Motion to Suppress which was denied. On page 15, of his Report and Recommendation, Judge Moreno stated:

Page 2

> [T]he Court viewed the ex parte communication not as an attempt by
> officers to obtain a ruling or guidance on what to do or how to handle the
> situation, but rather, as an attempt to advise the Court that they had just
> discovered an error had occurred with respect to the person identified in
> paperwork that had been presented under oath to and approved by the
> Court . . . The Court interpreted the call from [the officer] as an attempt . .
> . to dispel any notion that officers had misrepresented or had not been
> above board in their disclosures to and in the identification of Defendant
> during and in connection with the search warrant application process.

Judge Moreno also allowed Petitioner and his counsel time to decide if they wanted Judge Moreno to recuse himself. Petitioner decided not to seek the recusal of Judge Moreno and communicated that decision to the judge. Petitioner's decision was supported by the expertise of Attorney Jana Miner. Ms. Miner, based on her experience and expertise, felt Judge Moreno was more likely to grant a motion to suppress evidence than the other Magistrate Judges who were then on the bench in the District of South Dakota. Doc. 41 (Affidavit of Jana Miner) and Doc. 46 at page 42.

The District Court adopted the Report and Recommendation and the denial of the Motion to Suppress was upheld by the Court of Appeals.

Petitioner has failed to meet either prong of the *Strickland* test. Attorney Miner set forth specific and legitimate reasons for not seeking Judge Moreno's recusal. Further, even if Judge Moreno had recused himself, there is no indication that the outcome would have been any different in this case where the suppression decision was reviewed by both the District Court and the Court of Appeals.

2.    Former counsel were not ineffective for failing to conduct a pretrial investigation
      (to include potential issues with identity) or to interview witnesses.

Petitioner claims ineffective assistance by his attorneys for their failure to: (1) interview Petitioner's nieces; (2) interview the co-conspirators; and (3) investigate mistaken identity.

*Alleged Failure to Interview of Petitioner's Nieces*

Petitioner's contention that his nieces were not interviewed is without merit. The nieces, Selina Burnette and Vickie Arjil[1], were interviewed by an investigator working for Attorney Albright. The nieces also testified at trial on behalf of Petitioner.

*Failure to Interview the Co-conspirators*

Petitioner's counsel did not interview three co-conspirators prior to trial. The co-conspirators were Phillip Burnette, Max Jensen, and John Farmer. Each of the co-conspirators entered into plea agreements, cooperated with the Government, and testified for the Government at Petitioner's trial.

Petitioner did not present any evidence to show how the pre-trial interview of those witnesses would have affected the results of the trial. Petitioner's complaint about the co-conspirators was that disparity in their sentences. Petitioner felt he should not have received a sentence of twenty years when the other three received sentences of twenty-six to thirty-two months. Doc. 26 at page 11.

Petitioner only speculated that the co-conspirators, represented by counsel, would have talked to his attorneys prior to trial. There is not evidence presented that indicates any of the co-conspirators would have changed any portion of their testimony had they been interviewed. Petitioner has wholly failed to show any prejudice.

*Failure to Conduct Pre-trial Investigation Regarding Palega's Identity*

Petitioner was identified as "Q" throughout the prosecution of his case. He acknowledged that name during his arraignment. His own witnesses at trial, Selina Burnette and Vickie Arjil, and Velma Burnette all identified him as "Q". The co-conspirators each identified Petitioner as "Q" during the trial.

Petitioner identified himself as "Q" when talking with his attorney. Exhibit 2, admitted at the evidentiary hearing, is a letter from Petitioner to Mr. Albright. Petitioner used the name "Q" when he signed the letter. Exhibit 3, is a letter from Petitioner's wife to his attorney in which she refers to Petitioner as "Q".

---

[1]Identified as "Nicki" at the evidentiary hearing held on Petitioner's Motion.

The failure to conduct a pre-trial investigation regarding identity is completely without merit.

Petitioner has failed to meet either prong of the *Strickland* test. Petitioner's nieces were interviewed, the co-conspirators may not have been available for interview, and Petitioner's identify as "Q" was never in question. Further, there is no indication that a further investigation would have affected the outcome of this case.

3.    Former counsel were not ineffective for failing to advise Petitioner of the hazards of going to trial and negotiating a successful plea agreement.

During the evidentiary hearing, Petitioner admitted that each of his former attorneys presented proposed plea agreements to him. Petitioner rejected the proposed agreements because he refused to cooperate with the Government in the prosecution of Ed Burnette.

Ms. Miner, who represented Petitioner prior to Mr. Albright being assigned to the case, recommended that Petitioner accept a plea agreement. Ms. Miner sent a letter to Petitioner, Doc. 41-1, in which she advised Petitioner that a conviction on drug charges in federal court would result in a severe sentence for Petitioner. Ms. Miner also advised Petitioner that he could enter a plea agreement to limit his sentence to ten years, but such an agreement would require Petitioner to cooperate in the prosecution of other persons. Ms. Miner specifically informed Petitioner that a ten year sentence is "a long sentence, but it is much shorter than what can happen if you go to trial and lose on both charges." Doc. 41-1, page 5.

Ms. Miner's testimony is credible.

Mr. Albright also told Mr. Palega that his case was becoming more and more difficult to defend as each of the co-conspirators took plea agreements. With that in mind, Mr. Albright discussed various plea agreements with Petitioner but Petitioner would not take any deal.

Mr. Albright's testimony is also credible.

Petitioner admitted that he was told by Mr. Albright that if he went to trial, Petitioner would receive a long sentence. Doc. 46, page 29.

Despite his attorneys' advice, Petitioner refused to enter any plea agreement that required him to cooperate in the prosecution of his co-conspirators. Doc. 46 at pages 8, 40, and 74.

Petitioner has failed to meet the first prong of the *Strickland* test. First, his factual representation is not accurate. Ms. Miner and Mr. Albright each discussed proposed plea agreements with Petitioner. Each attorney advised Petitioner that it would be in his best interest to reach a plea agreement, but Petitioner refused all proposals. Neither Ms. Miner nor Mr. Albright was deficient in their professional representation of Petitioner.

4.      Former counsel was not ineffective for failing to make Batson challenges during jury selection.

Petitioner correctly acknowledges that the jury pool selection process used in his case has been approved by the Eighth Circuit. *United States v. Clifford*, 640 F.2d 150, 155-156 (8th Cir. 1981). Yet Petitioner faults Mr. Albright for failing to object to the make-up of the jury pool. Petitioner provides no basis for such an objection other than the recitation of "facts" that are not a part of the record in this case.

Mr. Albright was not deficient in his representation for failing to object to the make-up of the jury pool when the jury pool was selected in a manner approved by the Eighth Circuit. Petitioner can show no prejudice because of Mr. Albright's failure to make a baseless objection.

Petitioner also alleges a deficiency in Mr. Albright's representation for his failure to make a Batson challenge when the Government used a peremptory challenge and removed Flora Crane from the jury. Flora Crane may be a member of a minority race, but her race was not established at the evidentiary hearing, consequently, Petitioner has failed to show if a Batson challenge was even possible.

Further, Mr. Albright did not object to Ms. Crane's removal because she indicated she knew one of the law enforcement officers involved in the prosecution of the criminal case against Petitioner. Mr. Albright had a very good reason to not object to the removal of Ms. Crane because she knew one of the officers involved in the case.

Petitioner has failed to show any deficiency in Mr. Albright's representation during voir dire. Even if Mr. Albright's decisions were wrong and deficient, Petitioner has failed to even argue any prejudice as the result of the jury selection process.

5.     Former counsel was not ineffective for failing to object to leading questions at trial.

Fed.R.Evid. 611(c) limits the use of leading questions. Leading questions "should not be used on direct examination except as necessary to develop the witness's testimony." As a basis for this assertion, Petitioner submitted a partial transcript of his criminal trial proceedings (admitted as Petitioner's Exhibit 1) with approximately 117 questions highlighted that Petitioner felt were improper leading questions. Petitioner, for the most part, simply highlighted the questions asked by that prosecutor that called for "yes" or "no"answers. A leading question is one that suggests or indicates the particular answer desired. *United States v. DeWitt*, 232 F. 443, 445 (8th Cir. 1916). Just because a question can be answered either "yes" or "no" does not make it a leading question.

Petitioner, in his Post Hearing Brief, Doc. 48 on page 13, gave five examples of potentially leading and objectionable questions:

Q: And after that period of time, did you begin to receive methamphetamine from the defendant?

Q: Did you --- even though you weren't getting the higher quantities of methamphetamine from him, did you continue to get methamphetamine from the defendant after you had sold the three ounces?

Q: And during this 12-month period of time that you're actually involved in selling methamphetamine, do you continue to get that from the defendant?

Q: Now, when he would give you this methamphetamine and tell you to go out and sell it, did he give you — tell you how much you needed to pay for it?

Q: And so you provided information as it relates to this defendant from the very beginning?

The questions used as examples, in the context of the questioning, do not appear to be improper leading questions. Although the questions call for a "yes" or "no" answer, they do not suggest a desired answer and even if an answer is suggested, the evidence obtained through those questions could have been introduced simply by rephrasing the questions.

Petitioner specifically argues that leading questions were used by the prosecutor in examination of the co-conspirators and that the testimony of the co-conspirators was "largely the basis for the total drug quantity attributed to Mr. Palega." Doc. 48 at page 14. Petitioner does not point to any objectionable leading question establishing quantities. To the contrary, Mr. Albright was very careful when the witnesses were giving testimony regarding quantities. An example is on the page numbered 355 of Petitioner's Exhibit 1.

Implicitly, by stating the co-conspirators' testimony was *largely* the basis for the drug quantities, Petitioner acknowledges that he cannot show prejudice from the questioning. Even if the questioning was improper, other evidence was introduced that established the drug quantities.

Finally, the Eighth Circuit affirmed the District Court's determination of drug quantity in this case and Petitioner is not allowed to relitigate the issue. *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003).

On this issue, Petitioner has failed to show that Mr. Albright made professional errors. Further, even if Mr. Albright had made professional errors in allowing leading questions, Petitioner was not prejudiced because the answers to the supposed leading questions were only a part of the basis for the determination of drug quantities.

6.  Former counsel was not ineffective for failing to argue that certain quantities of methamphetamine testified to were, in fact, sugar.

Petitioner argues as follows. Mr. Albright failed to properly investigate this case. Specifically, he failed to properly interview Victoria Burnette. If Mr. Albright had interviewed Victoria Burnette, he would have learned from Ms. Burnette that

certain quantities of alleged methamphetamine were, in fact, sugar. Had Ms. Burnette testified at sentencing and informed the Court that certain quantities of alleged methamphetamine were, in fact, sugar, Petitioner would have received a lesser sentence.

Petitioner's argument fails for a number of reasons. First, Victoria Burnette was interviewed by Mr. Albright and his investigator, but she never said that part of the methamphetamine was sugar. Petitioner did not call Ms. Burnette as a witness at the evidentiary hearing in this case, so this Court has no evidence to support Petitioner's claim that some of the methamphetamine was sugar.

At sentencing, Mr. Albright chose to attack the quantity of the methamphetamine rather than challenging whether the substance was, in fact, methamphetamine. His strategy was explained and was sound. Doc. 46 at pages 68 to 70. Mr. Albright's reasoned decision not to call a witness "is a virtually unchallengeable decision of trial strategy." *Rodela-Aguilar v. U.S.*, 596 F.3d 457, 464 (8th Cir. 2010).

The District Court determined the quantity by relying on sworn testimony at trial. Doc. 268 of the criminal file at page 35.

Petitioner has also failed to show that his sentence would have been reduced even if Ms. Burnette had testified. This Court has not basis, based on the evidence presented at the evidentiary hearing, to believe Ms. Burnette's testimony, even if believed, would have resulted in a lesser sentence.

Petitioner produced no evidence to support this assertion. He failed to show that Mr. Albright made professional errors in his strategy at the sentencing hearing. Further, even if Mr. Albright had made professional errors at the sentencing hearing, Petitioner has not shown how he was prejudiced.

7.   Former counsel was not ineffective for failing to argue on appeal the Magistrate Judge's conflict of interest.

This argument is an extension of Petitioner's first argument.[2] Petitioner states, "The fact remains that a basis existed for Magistrate Moreno's recusal and both trial and appellate counsel failed to raise it." Doc. 48 at page 16. Mr. Albright was both trial counsel and appellate counsel.

As correctly stated by Respondent's counsel, "Since Palega's claim of ineffective assistance at the trial level on this issue is without merit, appellate counsel's failure to raise these arguments on appeal does not constitute deficient performance and therefore could not have prejudiced Palega." That statement is adopted by the Court. Petitioner fails the *Strickland* test on this issue.

CONCLUSION

For the reasons set forth herein and based on the record in this case and the arguments of the parties, it is respectfully recommended that the relief requested by Petitioner be denied.

NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b )(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *See, Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990) *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

Dated January ___7___, 2014 at Aberdeen, South Dakota.

William D. Gerdes
US Magistrate Judge

---

[2]Petitioner's first allegation was that his former counsel should have sought the recusal of Judge Moreno.

Page 10